1  BENJAMIN B. WAGNER
   United States Attorney
2  R. STEVEN LAPHAM
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2724

FILED

MAR 8 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. No. S-11-055 JAM |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| ALEXANDER PIGGEE, | DATE: March 8, 2011 |
| Defendant. | TIME: 9:30 a.m. |
| | COURT: #6 |

I.

**INTRODUCTION**

**A. Scope of Agreement:** The indictment in this case charges the defendant with two counts of arson in violation of 18 U.S.C. § 844(i). This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

////

1

1     **B. Court Not a Party:** The Court is not a party to this Plea
2 Agreement. Sentencing is a matter solely within the discretion of
3 the Court, the Court is under no obligation to accept any
4 recommendations made by the government, and the Court may in its
5 discretion impose any sentence it deems appropriate up to and
6 including the statutory maximum stated in this Plea Agreement. If
7 the Court should impose any sentence up to the maximum established
8 by the statute, the defendant cannot, for that reason alone,
9 withdraw his guilty plea, and he will remain bound to fulfill all of
10 the obligations under this Plea Agreement. The defendant
11 understands that neither the prosecutor, defense counsel, nor the
12 Court can make a binding prediction or promise regarding the
13 sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

16     **A. Guilty Pleas:** The defendant will plead guilty to both
17 counts contained in the indictment which charge separate violations
18 of 18 U.S.C. §844(i)(arson). The defendant agrees that he is in fact
19 guilty of these charge and that the facts set forth in the Factual
20 Basis attached hereto as Exhibit A are accurate.

21     Prior to sentencing in this case and as a further condition of
22 this plea agreement, the defendant will plead guilty to one count of
23 arson charged in Sacramento County Superior Court Case Number
24 11F01061 with the understanding that the Sacramento County District
25 Attorney will recommend a term of imprisonment to run concurrently
26 with the sentence imposed in this case.

27     **B. Restitution:** The Mandatory Victim Restitution Act requires
28 the Court to order restitution to the victims of certain offenses.

Defendant agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**C.  Fine:** The defendant understands that the court may order a monetary fine in addition to a term of imprisonment, restitution and a special assessment.  The defendant agrees to pay any such fine as may be ordered by the court.

**D.  Special Assessment:** The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  The defendant understands that this Plea Agreement is voidable by the government if he fails to pay the assessment prior to that hearing.

### III.

### THE GOVERNMENT'S OBLIGATIONS

**A.  No Further Charges:** The government agrees to bring no further charges as a result of the conduct set forth in Exhibit A.

**B.  Recommendations:**

  1.  **Incarceration Range:** The government agrees to recommend a sentence of ten years imprisonment.

  2.  **Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under §3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-

3

1 | sentence report, is truthful and candid with the probation officer,
2 | and does not otherwise engage in conduct that constitutes
3 | obstruction of justice within the meaning of U.S.S.G § 3C1.1, either
4 | in the preparation of the pre-sentence report or during the
5 | sentencing proceeding.

## IV.

### ELEMENTS OF THE OFFENSE

**A. Elements of the Offense:** The defendant understands that to be convicted of the crime of arson the government would have to show beyond a reasonable doubt each of the following elements:

(1) That the defendant caused a building or other real or personal property to be damaged or destroyed by means of fire;

(2) That the building or property which was damaged or destroyed was used in interstate commerce or in an activity affecting interstate commerce; and

(3) That the defendant acted maliciously - that is, he acted intentionally without just cause or excuse.

## V.

### MAXIMUM SENTENCE

**A. Maximum Penalty:** The maximum sentence that the Court can impose on each count is 20 years of incarceration, a fine of $250,000, a 3 year period of supervised release and a special assessment of $100 for each count.

**B. Minimum Penalty:** The minimum penalty that the Court can impose on each count is 5 years of incarceration.

**C. Violations of Supervised Release:** The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term

of supervised release and require the defendant to serve up to 5
additional years imprisonment.

## VI.

### SENTENCING DETERMINATION

A. **Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

B. **Stipulations Affecting Guidelines Calculation:** The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

////

Count 1:

1. **Base Offense Level:** The base offense level is **24**. U.S.S.G. 2K4.1(a)(1).
2. **Specific Offense Characteristics: None**
3. **Adjusted Offense Level: 24**
4. **Acceptance of Responsibility: -3**
5. **Overall Offense Level: 21**
6. **Advisory Guideline Range: 37-46 (60 months mandatory minimum)**

Count 2:

1. **Base Offense Level:** The base offense level is **33**. calculated as follows, pursuant to U.S.S.G. 2K4.1(a)(4):
   (a) Base Offense Level under U.S.S.G. 2K4.1(a)(4): **2**
   (b) Base Offense Level under U.S.S.G. 2B1.1(a)(1): **7**
   (c) Amount of Loss ($50M - $100M): **24**
2. **Specific Offense Characteristics: None**
3. **Adjusted Offense Level: 33**
4. **Acceptance of Responsibility: -3**
5. **Overall Offense Level: 30**
6. **Advisory Guideline Range: 97-121 months.**

C. **Departures or Other Enhancements or Reductions:** The government intends to recommend a sentence below the applicable guideline range based on factors set forth in 18 U.S.C. § 3553(a). The defendant is also permitted to argue for a downward departure from the applicable advisory sentencing guidelines based on 3553(a) factors including, but not limited to, those identified by the government.

////

## VII.

## WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights:

1. **Public and Speedy Trial:** If defendant were to plead not guilty to the charge in the information, he would be entitled to a public and speedy trial.

2. **Jury Trial, Presumption of Innocence, Unanimous Verdict:** The defendant has an absolute right to a jury trial. At that trial, the jury would be instructed that the defendant is presumed innocent and that he carries that presumption throughout the trial until such time as the government overcomes the presumption by evidence adduced at the trial. The jury would be further instructed that it could not convict the defendant unless all twelve jurors agreed that the government had proved guilt beyond a reasonable doubt.

3. **Confrontation of Witnesses:** At the trial, the defendant would be entitled to see, hear and confront the witnesses and the evidence against him. These witnesses would be testifying under the penalty of perjury and would be subject to cross-examination by the defendant's attorney.

4. **Compulsory Process:** At the trial, the defendant would be entitled to present witnesses and other evidence in his own behalf and, if the witnesses refused to appear voluntarily, the defendant would be entitled to use the court's process to compel their attendance.

////

1    **5. Privilege Against Self Incrimination:** At a trial, the
2 defendant would have a privilege against self-incrimination so that
3 he could not be compelled to testify and the jury could be
4 instructed that no inference of guilt could be drawn from the
5 defendant's failure to testify.

6    **6. Right to Appeal:** If, after a trial, the defendant
7 were convicted, he would have a right to appeal the conviction.

8    **7. Representation of Counsel:** The defendant is entitled
9 to be represented by competent counsel through all stages of the
10 case, including appeal, and if the defendant could not afford an
11 attorney one would be appointed for him by the court.

12    Defendant understands that by pleading guilty he is waiving all
13 of the rights set forth above. Defendant's attorney has explained
14 those rights to him and the consequences of his waiver of those
15 rights and the defendant freely and voluntarily consents to said
16 waiver.

17    **B. Waiver of Appeal and Collateral Attack:** The defendant
18 understands that the law gives him a right to appeal his conviction
19 and sentence. He agrees as part of his plea, however, to give up
20 the right to appeal the conviction and the right to appeal any
21 aspect of the sentence imposed in this case so long as his sentence
22 is no longer than the top of the Sentencing Guidelines range
23 determined by the Court consistent with the stipulations set forth
24 above about the Sentencing Guidelines variables (that is, an
25 adjusted offense level of 33 or below). He specifically gives up his
26 right to appeal any order of restitution the Court may impose.

27    Regardless of the sentence he receives, the defendant also
28 gives up any right he may have to bring a post-appeal attack on his

conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

Notwithstanding the agreement in part III.A above that the government will bring no further charges arising out of the facts set forth in Exhibit A, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or reduce or set aside his sentence on the charge to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on that count; and (2) to file any new charges that would otherwise be barred by this Plea Agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

C. **Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Plea Agreement and any charges previously dismissed).

////

## VIII.
### ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.
### APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

DATED: MARCH 8, 2011

JOHNNY L. GRIFFIN, III
Counsel for Alexander Piggee

**B. Defendant:** I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement. Finally, I am

////
////
////

10

```
 1 │ satisfied with the representation of my attorney in this case.
 2 │ DATED:  3/8/11                          Alexander Piggee
 3 │                                         ALEXANDER PIGGEE
   │                                         Defendant
 4 │
 5 │     C.  Attorney for United States:  I accept and agree to this
 6 │ Plea Agreement on behalf of the government.
 7 │ DATED:   3/8/1
 8 │                                         BENJAMIN B. WAGNER
   │                                         Acting United States Attorney
 9 │
10 │                                    By:  R Steven Lapham
   │                                         R. STEVEN LAPHAM
11 │                                         Assistant U.S. Attorney
```

# EXHIBIT "A"

## Factual Basis for Plea

Count 1

On October 21, 2010, at approximately 4:36 a.m., the defendant set fire to fibrous coconut material in the garden center of WalMart located at 5821 Antelope Road in Sacramento County. Prior to setting the coconut material on fire, the defendant had doused it with lighter fluid and left the can on it's side with the pour spout open.

Surveillance cameras show that the defendant entered and exited the garden center several times immediately prior to the onset of the fire. The last time he entered that area he remained for 2 minutes and 11 seconds. Approximately 5 minutes and 42 seconds after he exited, smoke can be seen on the surveillance camera. The smoke was observed by store personnel about 1 minute and 14 seconds after that. The defendant was the only person entering/exiting the garden center during this time.

WalMart is a nationwide retail chain whose individual stores, including the one located at 5821 Antelope Road, are used in interstate commerce and in activities affecting interstate commerce.

Count 2

On October 21, 2010, at approximately 9:00 a.m., the defendant entered The Game Stop located in the Westfield Galleria, a mall located in Placer County. After chatting with the manager for a few moments the defendant informed him that he wanted to buy an Xbox gaming console. At this point he set a laptop on the counter, opened it up and began typing as if he were on a website. The defendant then appeared to answer the phone, although the defendant did not hear it ring, and stated "there is just one guy in here." After hanging up, the defendant told the manager that he had to do something big today to save his sister who was being held by terrorists. The defendant explained that terrorists were holding his sister hostage and that he had to do something big to get their attention. The defendant then told the manager that he was going to blow the place up and that the whole place would go up in flames. The defendant then had the manager smell his bag which had an odor of kerosene or some similar product. The defendant then pulled a lighter from his pocket and told the manager to leave. As the manager exited the store, he saw PIGGEE walk toward the back storage room.

After leaving the store, the manager summoned mall security. Upon his arrival at The Game Stop, a mall security officer proceeded to the back storage room where the defendant had last been seen. The door to the room was shut but the officer was able to open the door approximately 2 to 3 feet and observed 10 foot high flames approximately 6 feet into the room. At this point, the defendant appeared from behind the door and said "You need to leave right now

1

or I will shoot you." Because the officer could not see PIGGEE's right hand, he complied.

Thereafter, as the fire continued to burn, the defendant exited the storage room through the ceiling and made his way to an adjoining clothing store, Anchor Blue. There, he exchanged his clothes for clothes from the shelves of Anchor Blue. For over two hours, the defendant remained hidden somewhere in the mall. At approximately 12:11 p.m. he was apprehended when he emerged from a service hallway/stairwell near a first floor entrance/exit to the mall. The defendant was wearing clothes to which the security sensor was still attached and was also wearing an employee name badge.

Following his arrest, the defendant was interviewed several times, giving numerous self-serving, inconsistent, and false statements. At first, the defendant claimed to be a mall employee but was unable to identify the store he worked for. Later, he admitted that he was not a store employee, but claimed that when the incident began he hid in a back room of one of the stores hoping to steal some clothes. Later in the interview he admitted that he was the one who started the fire but claimed that a drug dealer was allegedly in the ceiling above the Game Stop and had threatened to harm his mother and sister if the defendant did not create a distraction so that he could escape. The defendant said he got the call from the drug dealer instructing him to create the distraction while he was in The Game Stop but also acknowledged that he had bought a flammable liquid several hours earlier. During this portion of the interview, the defendant stated that he thought there was a homemade bomb in the backpack that he had left in The Game Stop, that there was a second suspect still in the mall, and that there was a second bomb but he couldn't remember where it was. During this portion of the interview, the defendant acknowledged that when he was in The Game Stop he told the manager that terrorists had told him to do something, but that was only to get the people out of the store.

Several hours after making these statements, the defendant asked to see the interviewing officer again and told the officer that he (the officer) "had his number" and that he (Piggee) had tried to trick him. He said there was no one up in the ceiling and that he had selected The Game Stop because he liked video games and it was the only store open.

In a telephone interview with KOVR News, the defendant stated that his plan was to steal an Xbox. He then described how he set the fire at The Game Stop and made his escape.

Westfield Galleria is a large shopping mall containing multiple retail stores that are used in interstate commerce and in activities affecting interstate commerce.